UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WILLIAMS,

                Petitioner,                Case No.  2:15-cv-10632
                                                                    Hon. Victoria A. Roberts

v.

S.L. BURT,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

This is a habeas case under 28 U.S.C. § 2254. Petitioner Robert Williams was convicted after a jury trial in the Wayne Circuit Court of assault with intent to do great bodily harm, MICH. COMP. LAWS § 750.84, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during a felony (felony firearm), MICH. COMP. LAWS § 750.227b.  As a result of these convictions, Petitioner is serving a sentence of 8-to-24 years for the assault conviction, 1-to-24 years for the concealed weapon and felon in possession convictions, and a consecutive 5-year term for the felony-firearm conviction. The petition raises a single claim: Petitioner's right to a fair trial was violated when the prosecutor called a witness at trial who testified that he was reluctant to testify because "something happened," which suggested that Petitioner threatened him without any proof.  The Court finds that Petitioner's claim is without merit. Therefore, the petition is denied. The Court also denies Petitioner a certificate of appealability, but grants permission to proceed on appeal in forma pauperis.

I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The charges arose out of an incident in which Martell Harper was shot in the leg. Harper was with Derrick Murray at the time of the incident, and both testified at trial. Harper knew both defendant and Murray and arranged for them to meet to discuss a drug deal involving Oxycontin, a prescription medication. According to Harper, Murray was considering buying the pills from defendant. Harper testified that defendant called him the day before the shooting to discuss the time and place where they would meet. The next day, he and Murray arrived at the specified location, which Harper believed to be where defendant lived. When they arrived, defendant was standing in front of the apartment building and led them to a basement laundry room. Harper testified that defendant and another man then pointed guns at him and Murray and demanded money. Defendant pulled a baby's mattress over Harper and shot him through the mattress. Harper identified defendant as his shooter but did not know the other gunman.
>
> Murray testified that he did not know what either of the gunmen looked like and could not identify defendant. Murray was asked how he got to court that morning, and he stated that officers came to get him but he came voluntarily. The prosecutor started to ask Murray about his recollection of proceedings at district court, and defense counsel objected on relevancy grounds.
>
> The trial court overruled the objection stating, "It could go to the reason why he testifies in the way that it (sic) does." The prosecutor asked Murray whether he remembered telling the prosecutor at the district court proceeding that he did not wish to testify against defendant and that, if he took the stand, he would not say anything. Murray replied affirmatively and stated that in fact he did not testify at defendant's preliminary examination. The prosecutor then asked Murray if he remembered the purpose for him being in district court that day, and Murray responded, "You said come on the case and something happened." Asked whether he wanted to be in court to testify at defendant's trial, Murray answered, "No, sir."

*People v. Williams*, No. 308866, 2013 WL 4081225, at *1 (Mich. Ct. App. Aug. 13, 2013).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claim:

> I. Was Mr. Williams denied due process and a fair trial when the court abused its discretion and permitted extensive testimony that one of the two complainants had failed to appear at previously scheduled court appearances and was reluctant to be

2

testifying at trial?

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. The court held that the challenged testimony was relevant to assessing the witness's credibility and that its probative value was not substantially outweighed by the potential for prejudice under Michigan Rule of Evidence 403. *Williams*, 2013 WL 4081225, at *2.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim as well as an additional claim not raised in this action. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Williams*, 843 N.W.2d 203 (Mich. 2014) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S.

63, 73 (2003) (internal quotation marks omitted). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted). Indeed, under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, U.S. , 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, U.S. , 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, U.S.

4

, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

## III. Analysis

Petitioner's sole claim involves the prosecutor's direct examination of Murray. He argues that the prosecutor engaged in a long exchange with Murray that prejudiced the defense because it suggested without any direct evidentiary support that Petitioner threatened Murray not to testify. On direct appeal, Petitioner largely relied on state evidentiary law to support his claim. But Petitioner also claimed that admission of Murray's testimony violated his due process right to a fair trial, relying on *Fahy v. Connecticut*, 375 U.S. 85, 87-88 (1963).

*Fahy* has no application to Petitioner's claim. The issue in *Fahy* is the extent to which the admission of evidence obtained after an illegal search and seizure in violation of the Fourth Amendment is subject to harmless error analysis. 375 U.S. at 86. *Fahy* says nothing about whether the admission of prejudicial testimony can rise to the level of a due process violation.

"Errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006). However, "to show a due-process violation under AEDPA rooted in an evidentiary ruling, there must be a Supreme Court case establishing a due-process right with regard to that specific kind of evidence." *Collier v. Lafler*, 419 Fed. App'x 555, 558 (6th Cir. 2011); *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003).

Here, the record shows that after the prosecutor asked a few questions of Murray to establish his familiarly with Petitioner, the following exchange unfolded:

Q. All right. Let me ask you something, sir. How did you get to court this morning?

A. The officers came and got me.

5

Q. Did you come here voluntarily?

A. Yes.

Q. Okay. The officers gave you a ride here?

A. Yes.

* * *

Q. Do you remember February of this year, 2011, meeting me at 36th District Court in the city of Detroit?

A. Yes.

Q. And do you remember the purpose was -- the purpose for you being in court that day?

A. You said come on the case and something happened.

Q. Okay. And do you recall that that case involved the same, it's the same case that we're here on today?

A. Yes.

Q. On February the 3rd, 2011, did you tell -- you had a conversation with me, right?

A. Yes.

* * *

Q. Sir, do you recall telling me that you did not want to testify against the person by the name of Robert Williams?

A. Yes.

Q. Did you recall telling me that, in fact, if you took the stand you would not say anything?

A. Yes.

Id., pp. 129-131.

Petitioner asserts that this exchange unfairly suggested that Petitioner threatened Murray

because Murray said "something happened" before he indicated that he did not want to testify against Petitioner.

There is no Supreme Court case the Court is aware of, and Petitioner does not cite to one, holding that admission of evidence regarding a witness's reluctance to testify due to a suggested threat by the defendant can violate the defendant's due process right to a fair trial. The absence of any clearly established Supreme Court case creating a constitutional rule preventing the type of testimony admitted in Petitioner's case precludes relief under AEDPA. *Collier*, 419 Fed. App'x at 558. In fact, lower courts general find brief, unsolicited, potentially prejudicial remarks made by witnesses not to merit relief. See, e.g., *United States v. Martinez*, 430 F.3d 317, 337 (6th Cir. 2005) (police officer's unsolicited testimony that defendant had previous arrests did not warrant new trial); and *Zuern v. Tate*, 336 F.3d 478, 485-86 (6th Cir. 2003) (lay witness's unsolicited testimony that defendant was a "crazy man" who won't hesitate to murder again did not warrant new trial).

"Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical, highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000). Murray did not directly testify that Petitioner threatened him. Nor did the prosecutor in closing argument draw this inference from Murray's brief statement that "something happened." The complained-of testimony simply was not a crucial, critical, highly significant factor at trial.

Finally, even assuming that the testimony was improperly admitted, any error was harmless. A habeas petitioner is not entitled to relief based on state trial court error unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993). Murray's statement was isolated and did not directly accuse Petitioner of threatening him. The prosecutor never followed up on the statement to

suggest during closing argument that Petitioner had threatened Murray. And as the Michigan Court of Appeals correctly noted, the evidence in this case was strong. *Williams*, 2013 WL 4081225, at *2. Harper identified Williams as his shooter, and Murray–despite his reluctance to testify–ultimately corroborated Harper's account of the crime, even if he could not identify the perpetrators. *Id*. Accordingly, the statement did not have a substantial and injurious effect or influence in determining the jury's verdict.

The Court finds that Petitioner's claim is without merit, and the petition will therefore be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability; he cannot support his claim with reference to any clearly established Supreme Court law. The Court denies a certificate of appealability with respect to Petitioner's claim.

The Court will, grant permission to appeal in forma pauperis ; any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

V. Conclusion

The Court: 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

S/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: October 30, 2015

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Robert Williams by electronic means or U.S. Mail on October 30, 2015.

s/Linda Vertriest
Deputy Clerk

---